# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

CIARA VESEY,

    PLAINTIFF,

VS.

ENVOY AIR, INC. d/b/a AMERICAN EAGLE AIRLINES, INC,

    DEFENDANT.
_____/

CIVIL ACTION NO. _____

HON. _____

## COMPLAINT

PLAINTFF, CIARA VESEY, by and through her attorneys, CARLA D. AIKENS, P.C., submits the following Complaint against DEFENDANT ENVOY AIR INC. ("Envoy").

## JURY DEMAND

COMES NOW PLAINTIFF, CIARA VESEY, and hereby makes her demand for trial by jury.

## JURISDICTION

1. At all times relevant to this action, Plaintiff was a resident of Scott County in the State of Iowa.

2. Defendant Envoy Air Inc. is a Delaware corporation with a continuous and systematic place of business in Chicago, Illinois.

3. This action is brought in this Court on the basis of federal question jurisdiction, pursuant to Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq.

4. Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

**VENUE**

5. Venue is proper in the Northern District of Illinois pursuant to Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), because Defendant has its principle office in this district.

**STATEMENT OF FACTS**

6. Ms. Vesey was hired by Defendant as a station agent on July 2, 2012.

7. Ms. Vesey was successful at her job.

8. On or around February 25, 2016, and again on or around March 22, 2016, Ms. Vesey levied a complaint about Defendant's racially motivated selection for hiring and training opportunities to Defendant's Human Resources Department.

9. No formal action was taken with regard to these complaints.

10. On August 15, 2016, in front of fellow co-workers, Ms. Vesey's colleague, Eric Masengarb, told Ms. Vesey that she should, "stop playing the race card and go back and pick cotton."

11. Shortly thereafter, Ms. Vesey formally reported this incident to Defendant's Human Resources Department.

12. Upon information and belief, Defendant's lead agent and Ms. Vesey's direct supervisor, Carrie McMurray, and Mr. Masengarb were having an affair.

13. After Ms. Vesey reported this incident, despite the fact that Ms. McMurray was Plaintiff's direct supervisor, and they worked together twice a week, Ms. McMurray would avoid Ms. Vesey and refused to speak to her.

14. An investigation into the August 15, 2016 incident ensued, and eventually, Mr. Masengarb was terminated for the egregious behavior.

15. After Mr. Masengarb was fired, Ms. McMurray told her fellow lead station agent, Ashley Emerick, that it was Ms. McMurray's opinion that Plaintiff "set Eric [Masengarb] up."

16. Moreover, Ms. McMurray explicitly told Ms. Emerick that she wanted Ms. Vesey fired.

17. At the end of August, Jared McMurray, Ms. McMurray's husband and a non-employee third-party, approached Ms. Vesey's colleague, John Stinocher, and informed him that he knew the exact nature of Ms. Vesey's complaint against Mr. Masengarb and then expressed disappointment that Mr. Stinocher cooperated with the investigation.

18. On August 31, 2016, Ms. Vesey e-mailed Danielle Griffen, Defendant's Human Resources Legal Representative, to express the disappointment she had in Defendant's blatant disregard of its duty to keep her complaints confidential.

19. Moreover, in that correspondence, Ms. Vesey informed Ms. Griffen of the intimidation by fellow employees she was being forced to endure as a result of this leak of confidential information. She finished by explaining how this violation of her confidentiality rights is directly contradictory to the purpose of the system Defendant has in place to combat that very type of harassment and intimidation.

20. On or around October 3, 2016 Defendant's Human Resource Department began investigating Ms. Vesey for alleged "travel abuse," at Ms. McMurray's order.

21. Ms. McMurray also participated in the investigation of her complaint, which included working on Ms. Vesey's investigation during non-work hours.

22. Upon information and belief, Ms. McMurray further refused to pick up any shifts until Ms. Vesey was fired.

23. On or around October 4, 2016, Ms. Vesey filed a complaint with Defendant's Human Resources Department against Ms. McMurray.

24. There was no formal disciplinary action taken with regard to Ms. Vesey's October 4, 2016 complaint.

25. On October 11, 2016, Ms. Vesey was interrogated for two hours by Defendant's Human Resource Department regarding her alleged "travel abuse."

26. On or around October 12, 2016, Ms. Vesey's colleague informed her that her general manager, Teresa White, told the general manager at Defendant's Champaign, Illinois location that Ms. Vesey had "reported [her] as being prejudiced," because of the way she previously handled her discriminatory treatment.

27. On October 12, 2016, Ms. Vesey filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR") against Defendant, and was given Charge Number 2017-SN-0872.

28. In her charge of discrimination, Ms. Vesey noted the harassment and discrimination that she faced based upon her race, the retaliation she was facing because of her attempts to quell this harassment and discrimination, as well as how that the retaliation, harassment, and discrimination had culminated in a hostile workplace environment.

29. On October 25, 2016, Ms. Vesey received a letter from Defendant claiming that its investigation into her October 4, 2016 complaint against Ms. McMurray had concluded and her allegations were "unsubstantiated."

30. On October 27, 2016, Defendant informed Ms. Vesey of its decision to terminate her as a result of Ms. McMurray's complaint.

31. Defendant alleged that the basis of Ms. Vesey's termination stemmed from two incidents in which she allegedly accessed and modified a travel reservation against company policy.

32. Ms. Vesey was never warned nor given a corrective action for this alleged conduct.

33. This was Ms. Vesey's first reprimand for "abuse of travel privileges."

34. At the time of Ms. Vesey's termination, she was the most senior non-management employee at Defendant's Moline, Illinois location.

35. Upon information and belief, a large number of Defendant's employees actually violate their travel privileges; however, none are fired for negligible violations, and some are not even reprimanded.

36. On October 27, 2016, Ms. Vesey, filed a grievance against Defendant for violating its own policy during Ms. Vesey's termination.

37. After Ms. Vesey's termination, the retaliation did not end because Defendant denied Ms. Vesey's claim of unemployment benefits and challenged her appeal.

38. On or around November 1, 2016, the IDHR notified Ms. Vesey of her civil suit rights and that her suit had been filed with the Equal Employment Opportunity Commission ("EEOC").

39. In December of 2016, Ms. Vesey filed her second level grievance with Defendant, in hopes of stopping the retaliatory treatment she was facing at work in an attempt to regain her career.

40. On or around January 25, 2017, Ms. Vesey again filed a complaint with the IDHR regarding the continual retaliation she was facing because of her attempts to hold Defendant and its agents accountable for their harassment and discrimination, which was given Charge Number 2017-SF-1502.

41. On or around February 24, 2017, the IDHR notified Ms. Vesey that she may bring civil suit for Charge Number 2017-SF-1502 beginning on February 10, 2018. **Exhibit A – IDHR Right to Sue.**

42. On November 14, 2017, the EEOC issued to Ms. Vesey a Notice of her Right to Sue with regard to her IDHR Charge No. 2017-SN-0872. **Exhibit B – EEOC Right to Sue Notice**.

43. Ms. Vesey requests relief as described in the Prayer for Relief below.

## COUNT I
## RETALIATION IN VIOLATION OF TITLE VII

44. Ms. Vesey incorporates by reference all allegations in the proceeding paragraphs.

45. At all material times, Defendant was an employer covered by, and within the meaning of, Title VII of the Civil Rights Act of 1964 (Title VII), as amended.

46. At all material times, Ms. Vesey was an employee covered by, and within the meaning of, Title VII of the Civil Rights Act of 1964 (Title VII), as amended.

47. Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to harass or retaliate against an employee for engaging in protected activity.

48. A respondeat superior relationship existed because Ms. McMurray and Ms. White had the ability to undertake or recommend tangible decisions affecting Ms. Vesey or the authority to direct Ms. Vesey's daily work activity, as alleged in the statement of facts.

49. Ms. Vesey engaged in protected activity when she took the following actions including but not limited filing union grievances, filing multiple complaints to the IDHR and the EEOC, and reporting her harassment and discrimination to Defendant's Human Resources Department

50. Defendant, through its employees, had knowledge that Ms. Vesey engaged in protected behavior because Ms. Vesey gave direct notice to her supervisors.

51. After Ms. Vesey engaged in protected activity, Defendant's agents thereafter harassed Ms. Vesey and took several adverse employment actions against Ms. Vesey because of that activity, as alleged in the statement of facts and herein, subjecting Ms. Vesey to severe or pervasive retaliatory harassment by a supervisor, including but not limited to harassing and subsequently terminating Ms. Vesey because she engaged in protected activity.

52. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Ms. Vesey's rights.

53. Ms. Vesey notified Defendants and its agents of the unwelcomed conduct or communication and Defendants failed to remedy the unwelcomed conduct or communication.

54. As a proximate result of the Defendants' retaliatory actions, Ms. Vesey has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

55. As a result of those actions and consequent harms, Ms. Vesey has suffered such damages in an amount to be proved at trial.

56. Ms. Vesey requests relief as described in the Prayer for Relief below.

## COUNT II
## RETALIATION IN VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT ("IHRA")

57. Ms. Vesey incorporates by reference all allegations in the proceeding paragraphs.

58. At all material times, Defendant was an employer covered by, and within the meaning of, 775 ILCS 5 et seq.

59. At all material times, Ms. Vesey was an employee covered by, and within the meaning of, 775 ILCS 5 et seq.

60. Defendant's conduct, as alleged herein, violated The Illinois Human Rights Act, which makes it unlawful to retaliate against an employee because he or she has made a charge, filed a complaint, assisted, or participated in an investigation, proceeding, or hearing under the Act.

61. A respondeat superior relationship existed because Ms. McMurray and Ms. White had the ability to undertake or recommend tangible decisions affecting Ms. Vesey or the authority to direct Ms. Vesey's daily work activity, as alleged in the statement of facts.

62. Defendant, through its employees, had knowledge that Ms. Vesey filed a charge, a complaint, and was assisting and participating in in the investigation to her claims because Ms. Vesey gave direct notice to her supervisors.

63. After Ms. Vesey engaged in these protected activities, Defendant's agents thereafter harassed Ms. Vesey and took several adverse employment actions against Ms. Vesey because of that activity, as alleged in the statement of facts and herein, subjecting Ms. Vesey to severe or pervasive retaliatory harassment by a supervisor, including but not limited to harassing and subsequently terminating Ms. Vesey because she engaged in protected activity.

64. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Ms. Vesey's rights.

65. Ms. Vesey notified Defendants and its agents of the unwelcomed conduct or communication and Defendants failed to remedy the unwelcomed conduct or communication.

66. As a proximate result of the Defendants' retaliatory actions, Ms. Vesey has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

67. As a result of those actions and consequent harms, Ms. Vesey has suffered such damages in an amount to be proved at trial.

68. Ms. Vesey requests relief as described in the Prayer for Relief below.

### COUNT III
### HARRASMENT-DISCRIMINATION ON THE BASIS OF RACE AND/OR SKIN COLOR IN VIOLATION OF TITLE VII

69. Ms. Vesey incorporates by reference all allegations in the proceeding paragraphs.

70. At all material times, Defendant was an employer covered by, and within the meaning of, Title VII of the Civil Rights Act of 1964 (Title VII), as amended.

71. At all material times, Ms. Vesey was an employee covered by, and within the meaning of, Title VII of the Civil Rights Act of 1964 (Title VII), as amended.

72. Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to harass or discriminate against an employee for on the basis of their race or skin color.

73. A respondeat superior relationship existed because Ms. McMurray and Ms. White had the ability to undertake or recommend tangible decisions affecting Ms. Vesey or the authority to direct Ms. Vesey's daily work activity, as alleged in the statement of facts.

74. Ms. Vesey is African American and a member of a protected class.

75. Ms. Vesey was subjected to offensive communication or conduct on the basis of her membership in this protected class.

76. The Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Ms. Vesey's rights.

77. Ms. Vesey notified Defendant and its agents of the unwelcomed conduct or communication and Defendant failed to remedy the unwelcomed conduct or communication.

78. The unwelcomed conduct or communication was intended to or in fact did substantially interfere with the Ms. Vesey's employment and created an intimidating, hostile, or offensive work environment, as alleged in the statement of facts.

79. As a proximate result of the Defendants' discriminatory actions, Ms. Vesey has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

80. As a result of those actions and consequent harms, Ms. Vesey has suffered such damages in an amount to be proven at trial.

81. Ms. Vesey requests relief as described in the Prayer for Relief below.

## COUNT IV
## RETALIATION IN VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT ("IHRA")

82. Ms. Vesey incorporates by reference all allegations in the proceeding paragraphs.

83. At all material times, Defendant was an employer covered by, and within the meaning of, 775 ILCS 5 et seq.

84. At all material times, Ms. Vesey was an employee covered by, and within the meaning of, 775 ILCS 5 et seq.

85. Defendant's conduct, as alleged herein, violated The Illinois Human Rights Act, which makes it unlawful to harass or discriminate against an employee on the basis of their race or skin color.

86. A respondeat superior relationship existed because Ms. McMurray and Ms. White had the ability to undertake or recommend tangible decisions affecting Ms. Vesey or the authority to direct Ms. Vesey's daily work activity, as alleged in the statement of facts.

87. Ms. Vesey is African American and a member of a protected class.

88. Ms. Vesey was subjected to offensive communication or conduct on the basis of her membership in this protected class.

89. The Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Ms. Vesey's rights.

90. Ms. Vesey notified Defendant and its agents of the unwelcomed conduct or communication and Defendant failed to remedy the unwelcomed conduct or communication.

91. The unwelcomed conduct or communication was intended to or in fact did substantially interfere with the Ms. Vesey's employment and created an intimidating, hostile, or offensive work environment, as alleged in the statement of facts.

92. As a proximate result of the Defendants' discriminatory actions, Ms. Vesey has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

93. As a result of those actions and consequent harms, Ms. Vesey has suffered such damages in an amount to be proven at trial.

94. Ms. Vesey requests relief as described in the Prayer for Relief below.

## COUNT V
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

95. Ms. Vesey incorporates by reference the allegations set forth above as if alleged herein.

96. Defendant, or Defendant's agents, knew or reasonably should have known that the conduct described herein would and did proximately result in physical and emotional distress to Ms. Vesey.

97. At all relevant times, Defendant, or Defendant's agents, had the power, ability, authority, and duty to stop engaging in the conduct described herein and/or to intervene to prevent or prohibit said conduct.

98. As a direct and proximate result of Defendant, or Defendant's agents, unlawful conduct, Ms. Vesey has suffered and continues to suffer severe emotional distress, humiliation, anguish, emotional and physical injuries, as well as economic losses and compensatory damages in an amount to be proven at trial.

**COUNT VI**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

99. Ms. Vesey incorporates by reference all allegations in the proceeding paragraphs.

100. Defendant's conduct as outlined above was intentional.

101. Defendant's conduct as outlined above was extreme, outrageous, and of such character as not to be tolerated by a civilized society.

102. Defendant's conduct as outlined above was for an ulterior motive or purpose.

103. Defendant's conduct resulted in severe and serious emotional distress.

104. As a direct and proximate result of Defendant's conduct, Plaintiffs have been damaged in the manner outlined above.

As such, Ms. Vesey is entitled to relief as set forth below.

## **RELIEF REQUESTED**

PLAINTIFF, CIARA VESSEY, RESPECTFULLY REQUESTS that this Honorable Court enter judgment against Defendant as follows:

1. Compensatory damages in whatever amount to which Ms. Vesey is entitled;

2. Exemplary damages in whatever amount which Ms. Vesey is entitled;

3. An award of lost wages and the value of fringe benefits, past and future;

4. An award of interest, costs, and reasonable attorney fees; and

5. An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated:  February 12, 2018

                                        Respectfully Submitted,

                                        /s/ Carla D. Aikens_____
                                        Carla D Aikens (P69530)
                                        Carla D. Aikens, P.C.
                                        Attorneys for Plaintiff
                                        615 Griswold Ste. 709
                                        Detroit, MI 48226
                                        carla@aikenslawfirm.com