UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| CIARA VESEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:18-cv-04124-SLD-JEH |
| | ) |
| ENVOY AIR, INC. d/b/a AMERICAN | ) |
| EAGLE AIRLINES, INC., | ) |
| | ) |
| Defendant. | ) |

ORDER

Before the Court is Defendant Envoy Air, Inc.'s ("Envoy") Motion for Summary Judgment, ECF No. 52. For the reasons that follow, the motion is GRANTED.

**BACKGROUND[1]**

Plaintiff Ciara Vesey, an African American woman, began working for Envoy as a station agent at the Quad Cities International Airport ("MLI") in July 2012. She was terminated from her employment on October 27, 2016 after an investigation into allegations that she abused her travel privileges. In this suit, she primarily alleges that she was terminated in retaliation for

---

[1] At summary judgment, a court "constru[es] the record in the light most favorable to the nonmovant and avoid[s] the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). The facts related here are, unless otherwise noted, taken from Envoy's statement of undisputed material facts, Mot. Summ. J. 2–13; Plaintiff Ciara Vesey's disputed material facts and additional undisputed material facts, Resp. Mot. Summ. J. 2–21, ECF No. 58; Envoy's reply thereto, Reply 1–5, ECF No. 63; and the exhibits to the filings. In many instances, Vesey attempts to dispute Envoy's stated facts merely by stating that she "alleges" that they are "disputed, material fact[s]," *see, e.g.*, Resp. Mot. Summ. J. 10, or that her testimony was mischaracterized, *see, e.g.*, *id.* at 5. This is not sufficient. A party must dispute a fact by citing to materials in the record or by showing that the materials cited do not establish the fact. Fed. R. Civ. P. 56(c)(1); CDIL-LR 7.1(D)(2)(b)(2) ("Each claim of disputed fact must be supported by evidentiary documentation referenced by specific page."). Where Vesey fails to properly dispute Envoy's facts, the Court considers them undisputed for purposes of the motion. *See* Fed. R. Civ. P. 56(e)(2). Vesey also indicates that some of her additional material facts are based "[u]pon information and belief." *See, e.g.*, Resp. Mot. Summ. J. 19. This is not sufficient to create a genuine issue of fact at summary judgment, so the Court does not rely on those facts.

making complaints to human resources and that she was harassed because of her race and in retaliation for her complaints.

## I. Vesey's Complaints

Vesey made at least three complaints to human resources while employed by Envoy. First, she complained to human resources in February and March 2016 about favoritism in scheduling and racial discrimination in training opportunities. A human resources officer investigated, but found Vesey's complaints unsubstantiated. Nevertheless, the officer reviewed Envoy's policies with management.

Second, Vesey complained in August 2016 about a racist remark made by a co-worker, Eric Masengarb. During a conversation in the break room, Masengarb told Vesey to "go back and pick cotton." Vesey Dep. 109:9–10, Resp. Mot. Summ. J. Ex. 1, ECF No. 59-1. He had previously made racist statements and gestures to Vesey, though she did not report them to management. For instance, when Vesey would "wear [her] hair in two afro puffs, he would grab them and say, Oh, I like your balls." *Id.* at 116:2–4. She asked him if he randomly grabbed white people's hair too, and "he just laughed and said, No." *Id.* at 116:6. Danielle Griffin, an Employee Relations Representative, investigated Vesey's complaint. She interviewed Vesey, Masengarb, and two other employees who were in the vicinity. She determined that the complaint was substantiated and Masengarb was terminated.

Third, sometime in September or October 2016, Vesey complained to human resources that Carrie McMurray, a lead station agent, was harassing and stalking her by looking at her travel history. Griffin investigated. She determined that, even if true, McMurray's conduct would not constitute harassment or stalking. Vesey claims in this lawsuit that McMurray also

harassed her by telling other employees that she did not want to work with Vesey and that she wanted Vesey to be fired.

## II.    Travel Abuse

Envoy employees enjoy travel benefits, including the ability to fly standby ("non-revenue") on any Envoy or American Airlines[2] flight with available seats and an employee discount on paid tickets. Employees' use of their travel benefits, however, is regulated by policies set forth in the Travel Guide. This is available to employees on Envoy's intranet. Violations of company policy can be grounds for termination "depending on the severity of the incident or offense and the employee's record." Rules & Regulations 2, Mot. Summ. J. Ex. 4, ECF No. 52-2 at 4–5. "Abuse of travel privileges will be grounds for dismissal." *Id.*

On September 14, 2016, Ashley Emerick, another station agent at MLI, filed a travel abuse complaint against Vesey with human resources. The complaint alleged that Vesey had violated company policy on September 10, 2016. Emerick testified that she filed a complaint after Teresa White, general manager of Envoy's MLI station, "brought th[e issue] up" with her. Emerick Dep. 84:22–23, Mot. Summ. J. Ex. 11, ECF No. 52-2 at 76–84.

Human resources consultant Irma Stevens received the complaint. White emailed Stevens on September 22 and October 2, 2016, alleging additional incidents of travel abuse. Stevens partnered with Valerie Durant, Corporate Security Investigator, to investigate the allegations. Durant reviewed Vesey's travel history and her activity in Sabre (the system Envoy uses to manage passenger flight reservations) and the non-revenue travel planner (the system employees use to book non-revenue travel). She also interviewed Vesey and another station agent, Michael Watkins.

---

[2] Envoy is a wholly owned subsidiary of American Airlines Group. *See* Our Company, Envoy, https://www.envoyair.com/our-company/ (last visited Dec. 20, 2019).

Durant's investigation revealed four incidents of Vesey violating company policy. Durant concluded that Vesey violated company policy in at least three ways: by changing her own reservations in Sabre, having a friend check her in for a flight instead of having her ticket reissued, and by putting a hold on a reservation and putting herself on the standby list for the same flight. Vesey made statements after her interview with Durant to the effect that she had no prior knowledge that her actions violated company policy. However, in August 2012, Vesey signed an orientation form in which she agreed to review all information and rules related to employee travel privileges and to abide by such rules. And she testified in her deposition that, though "no one sat down [with her] and said, Hey, this is how everything work[s]" and she did not get "formal training on how [sh]e w[as] supposed to use [he]r travel privileges," Vesey Dep. 23:13–16, she "had an understanding of how [she] was supposed to use [her] benefits," *id.* at 23:20–21.

Durant presented her findings to Stevens. Vesey had a serious disciplinary action in her history: on November 16, 2014, she received a Career Decision Day ("CDD") advisory after driving a jet bridge into an aircraft. She signed a letter of commitment, agreeing to comply with all company rules and regulations going forward. Stevens testified that a letter of commitment remains active for two years. Because Vesey had an active CDD at the time of the travel abuse investigation and the investigation revealed multiple policy violations, Stevens recommended termination. A committee consisting of Envoy's in-house attorney, a human resources vice president, and a finance vice president approved the termination.

### III. Procedural History

Vesey filed charges with the Illinois Department of Human Rights, alleging that she was subjected to harassment, discrimination, and retaliation. After receiving notice of her right to

bring suit, Vesey filed the instant lawsuit. Compl., ECF No. 1. Her complaint has six counts: I) retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17; II) retaliation in violation of the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101–5/10-104; III) harassment on the basis of race or color in violation of Title VII; IV) harassment on the basis of race or color in violation of the IHRA;[3] V) negligent infliction of emotional distress; and VI) intentional infliction of emotional distress. Envoy moves for summary judgment on all claims.

## DISCUSSION

### I.    Legal Standard

"Summary judgment is the 'put up or shut up' moment in a lawsuit." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (quoting *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003)). It is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is also appropriate if the party opposing summary judgment fails to establish a genuine issue of fact on an element essential to its case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). At the summary judgment stage, the court's function is not "to weigh the evidence and determine the truth of the matter[,] but to determine whether there is a genuine issue for trial"—that is, whether "there is sufficient evidence favoring the non[-]moving party for a jury to return a verdict" in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 370 (7th Cir. 1997). The court must view the evidence "in the light most favorable to the non-moving party[] and draw[] all reasonable inferences in that party's favor." *McCann v. Iroquois Mem'l*

---

[3] This count is labeled retaliation, but alleges harassment. *See* Compl. ¶¶ 82–94. The Court believes the label is a typographical error.

5

*Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010) (citing *Anderson*, 477 U.S. at 255). "A genuine issue for trial exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole." *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir. 1999) (quoting *Roger v. Yellow Freight Sys., Inc.*, 21 F.3d 146, 149 (7th Cir. 1994)).

## II. Analysis

### a. Tort Claims

Envoy argues that Vesey's tort claims—the negligent infliction of emotional distress and intentional infliction of emotional distress claims—are preempted. Mot. Summ. J. 24–25. Vesey makes no argument in response, so the Court deems these claims abandoned. *See Palmer v. Marion County*, 327 F.3d 588, 597–98 (7th Cir. 2003) (deeming the plaintiff's negligence claim abandoned because he failed to delineate it in his district court brief opposing summary judgment).

### b. Employment Discrimination Claims

Vesey brings her retaliation and harassment claims under both Title VII and the IHRA. The same framework applies to Title VII and IHRA claims, *Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016), so the Court analyzes the claims together.

#### 1. Retaliation

Title VII and the IHRA prohibit an employer from discriminating against an employee for opposing an unlawful employment practice. *See* 42 U.S.C. § 2000e-3(a); 775 ILCS 5/6-101(A). "To prevail on a . . . retaliation claim, the plaintiff must prove that (1) he engaged in an activity protected by the statute; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action." *Lewis v. Wilke*, 909 F.3d 858,

866 (7th Cir. 2018).[4]  Envoy concedes, for purposes of summary judgment, that Vesey can prove that she engaged in protected activity by filing complaints with human resources in February, March, and August 2016.  Mot. Summ. J. 13.  Envoy also concedes that her termination qualifies as an adverse action.  *Id.*  But it argues that Vesey cannot establish a genuine issue of fact as to causation.  *Id.*  It argues that she was terminated not in retaliation for filing complaints, but instead for her travel misconduct.  *See id.* at 14.

Vesey points to "three pieces of evidence," which she argues are "sufficient . . . to present a prima facie case of retaliation":

> (1) Teresa White communicated constantly with human resources regarding [Vesey] immediately after the incident happened with . . . Masengarb; (2) there was no actual policy that covered . . . [Vesey's] alleged[] violat[ions]; and (3) White encouraged . . . Emerick to report [Vesey] for travel abuse on a day when Emerick was not even working.

Resp. Mot. Summ. J. 22, ECF No. 58.  Envoy argues that none of these alleged pieces of evidence is supported by the evidence cited in Vesey's response.[5]  Reply 6–7, ECF No. 63.  The Court agrees.  The evidence presented by Vesey in her response shows only that White emailed Stevens on two occasions regarding allegations of travel abuse.  The evidence does show that White brought Vesey's alleged travel abuse to Emerick's attention.  But no cited evidence shows

---

[4] The parties make their arguments in terms of direct and indirect proof, but the Seventh Circuit has abolished this distinction. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) ("[W]e hold that district courts must stop separating 'direct' from 'indirect' evidence and proceeding as if they were subject to different legal standards."). Envoy also makes an argument in terms of an "indirect method." Mot. Summ. J. 15–17. It appears to be referring to the *McDonnell Douglas* burden-shifting framework, which remains a viable method of organizing and assessing evidence. *Ortiz*, 834 F.3d at 766. But Vesey does not make an argument through that framework, so the Court will not address it. *Cf. Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 880 (7th Cir. 2016) (suggesting that when a plaintiff does not present his response to a summary judgment motion in *McDonnell Douglas* terms, the court need not analyze the case through that framework).

[5] It is not the Court's responsibility to scour the record to find support for Vesey's arguments. *See Gross v. Town of Cicero*, 619 F.3d 697, 702 (7th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in the record." (quotation marks and brackets omitted)).

7

that Emerick was not working on the day she filed the complaint or that she was encouraged to file the complaint by White.

Moreover, the Court has no admissible evidence that White had a retaliatory animus, so even if she had been involved in the termination, her involvement would not prove that Vesey was terminated in retaliation for filing complaints.[6] *Cf.* Mot. Summ. J. 18 ("Plaintiff has offered nothing more than her assumption that the initial report about her suspicious travel activity report was motivated by retaliation."). Vesey argues that "[i]t is quite clear that White had discriminatory animus based upon the fact that she did not want to see . . . Masengarb fired following [Vesey's] complaint." Resp. Mot. Summ. J. 23. But, as Envoy argues, *see* Reply 6, the only support Vesey cites—her testimony of what other people told her that White said, *see* Resp. Mot. Summ. J. 20 (citing Vesey Dep. 202, 272)—is hearsay. *See* Fed. R. Civ. P. 801(c) (defining hearsay as an out-of-court statement offered to prove the truth of the matter asserted). "A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment." *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009); *Aida Food & Liquor, Inc. v. City of Chicago*, 439 F.3d 397, 403 (7th Cir. 2006) ("Plaintiffs have produced no evidence of animus, save Fakhoury's deposition testimony that many people in the community have told him that Alderman Thomas has 'ill will' toward himself and his store. That testimony is inadmissible hearsay insufficient to create a genuine issue of fact.").

Even if it were admissible, the cited evidence does not necessarily show a retaliatory bias. The first part of Vesey's deposition cited is Envoy's attorney's recitation of a complaint that Vesey made that an Envoy employee told her "that his manager had told him that [White] had

---

[6] Vesey also argues that she can prove retaliation via the cat's paw theory based on McMurray's animus. Resp. Mot. Summ. J. 22–24. But she provides no evidence that McMurray was involved in the travel abuse investigation which led to her termination, so her animus is irrelevant.

8

told the Champaign general manager that [Vesey] had reported her as being prejudice[d]." Vesey Dep. 202:19–22. All this shows is that White told someone that Vesey reported her. The second part of the deposition cited is Vesey's statement that Emerick told her that White "was involved in these conversations about that [sic] [Vesey] should have been fired, that they were trying to get [Masengarb] his job back." *Id.* at 272:15–18. The Court has no evidence of White's part in these conversations and therefore can draw no inference as to her motivation.

The last argument Vesey makes is that there was no actual policy covering Vesey's conduct. Resp. Mot. Summ. J. 22. Presumably, she is attempting to argue that the reason offered for her termination is pretextual, which could be evidence of retaliation. "Pretext involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically a phony reason for some action." *Argyropoulos v. City of Alton*, 539 F.3d 724, 736 (7th Cir. 2008) (quotation marks omitted). The argument that there was no policy covering Vesey's conduct is undeveloped and, more importantly, belied by the record. The Travel Guide clearly prohibits employees from changing their own reservations for full-fare tickets, *see* Travel Guide 25, Durant Decl. Ex. A, Mot. Summ. J. Ex. 2, ECF No. 52-1 at 79–108, which Envoy found Vesey did. Vesey also argues that she "disputes all of the alleged instances" of her abusing her travel privileges and that her violations were serious enough to result in termination. Resp. Mot. Summ. J. 25. But she points to no evidence to dispute the underlying facts and makes no specific argument to counter Durant's conclusion that she violated company policy.[7] *See Siegel*, 612 F.3d at 937 ("The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts."). To the extent she attempts to make a

---

[7] To the extent Vesey argues that she was not able to obtain discovery on relevant issues, the time for such an argument has passed. Moreover, Rule 56 provides a mechanism for a party to request that a court defer considering the motion based on its inability to present relevant evidence, but Vesey did not use it. *See* Fed. R. Civ. P. 56(d)(1).

comparison to McMurray, arguing that McMurray also violated the travel policies but was not fired or disciplined, it fails. McMurray said that she used Sabre to access her reservations when she was flying standby or non-revenue. *See* McMurray Dep. 42:10–18, Resp. Mot. Summ. J. Ex. 6, ECF No. 59-5. Even if this is a violation of company policy, it is not a violation of the same policies Vesey violated. And the Court has no information about McMurray's background or whether Envoy was aware of these violations, so it can draw no inference from the comparison. *See* Reply 9. Vesey has not demonstrated that there is a genuine issue of fact on her retaliatory termination claims and Envoy is entitled to summary judgment.

### 2. Hostile Work Environment

To establish a hostile work environment claim, a plaintiff must show that: "(1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability." *Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 566 (7th Cir. 2004) (quotation marks omitted). The Seventh Circuit also recognizes a retaliatory hostile work environment claim, which has the same elements except that the harassment must be in retaliation for engaging in protected activity. *See Flanagan v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 893 F.3d 372, 375 (7th Cir. 2018). Vesey points to seven incidents or pieces of evidence and argues that, considered together, she "has presented at least a question of fact of [sic] as to whether [her] work environment was hostile." Resp. Mot. Summ. J. 24–25. But she does not differentiate between incidents that are based on her race versus retaliation. *See id.* Race discrimination and retaliation are two different claims, *compare* 42 U.S.C. § 2000e-2(a) (prohibiting discrimination

10

on the basis of race), *with id.* § 2000e-3(a) (prohibiting retaliation), and she presents no support for the idea that she can combine incidents to establish one hostile work environment claim.

Regardless, she has not established a genuine issue of fact as to either claim. Some of her evidence is not of conduct or harassment she was subjected to, so it is not relevant to whether she was subjected to a hostile work environment. For instance, Vesey argues that she complained about White's poor treatment and her belief that African Americans were not given the same training opportunities. Resp. Mot. Summ. J. 24–25. An action that Vesey took—complaining—is not unwelcome harassment by others. To the extent Vesey is attempting to rely on the underlying poor and unequal treatment of which she complained, she has provided no evidence that it occurred. Similarly, she argues that she was uncomfortable speaking to management about issues she was experiencing. *Id.* at 25. But a feeling is not evidence of unwelcome harassment.

Other incidents she points to are unsupported by the record. *See* Reply 9. For instance, she argues that White talked about getting her fired. Resp. Mot. Summ. J. 24. The only evidence Vesey cites for this—that Emerick told Vesey that White was involved in conversations about Vesey getting fired, *see id.* at 20 (citing Vesey Dep. 272)—is hearsay and offers no detail about White's part in these conversations. *See supra* Section II(b)(1). Vesey also argues that White looked into her travel records and had others do the same. Resp. Mot. Summ. J. 24. But she points to no evidence to support this assertion.[8]

The remaining evidence is the racist comment and gesture made by Masengarb and McMurray's refusal to work with Vesey, *see id.* at 25, which she has suggested was motivated

---

[8] Vesey cites to her own deposition to support that White looked into her travel history regularly. *See* Resp. Mot. Summ. J. 20 (citing Vesey Dep. 180–81). But the cited portion of the deposition does not support that fact.

by retaliation for reporting Masengarb, *see* Compl. ¶ 13.[9]  Envoy argues that Masengarb's conduct was not severe or pervasive.  Mot. Summ. J. 19–20.  The Court agrees that the comment and gesture alone are likely insufficiently serious to state a racially hostile work environment.  *See Salvadori v. Franklin Sch. Dist.*, 293 F.3d 989, 997 (7th Cir. 2002) ("The mere utterance of a racial epithet that engenders offensive feelings does not sufficiently affect the conditions of employment to create a hostile work environment.").  Regardless, Vesey reported Masengarb's conduct and Envoy terminated him.  To demonstrate employer liability for co-worker harassment, a plaintiff must show that her employer "was negligent in discovering or remedying harassment."  *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 390 (7th Cir. 2010).  As Envoy argues, it remedied any harassment by Masengarb by terminating him, so it cannot be liable for this harassment.  *See* Reply 9.

As for the fact that McMurray refused to work with her, the only evidence Vesey cites to is that McMurray told others she did not want to work with Vesey.  Resp. Mot. Summ. J. 5 (citing Vesey Dep. 183–84); *see* Vesey Dep. 183:14–17 ("Q. What about the harassment? How was Carrie harassing you?  A. Telling other people that she didn't want to work the same shift if I was going to be around.").  This is inadmissible hearsay.  *See* Mot. Summ. J. 22.  Regardless, the Court agrees with Envoy that McMurray telling others she did not want to work with Vesey does not rise to the level of a hostile work environment.  *See id.* at 22–23; *cf. McKenzie v. Milwaukee County*, 381 F.3d 619, 624–25 (7th Cir. 2004) (holding that incidents where the supervisor was rude, standoffish, and unapproachable did not establish an objectively hostile

---

[9] Vesey states that "McMurray refused to work with [Vesey], which caused her to hurt herself from trying to do the work of two people." Resp. Mot. Summ. J. 25. Although unclear, the Court interprets this to mean that Vesey hurt herself. But no evidence was cited to support this assertion.

work environment). Vesey has not established a triable issue on her hostile work environment claims, so Envoy is entitled to summary judgment.

## CONCLUSION

Accordingly, the Motion for Summary Judgment, ECF No. 52, is GRANTED. The Clerk is directed to enter judgment and close the case.

Entered this 20th day of December, 2019.

                                              s/ Sara Darrow
                                             SARA DARROW
                               CHIEF UNITED STATES DISTRICT JUDGE